Eastern District of Kentucky
F I L E D
SEP 28 2018
AT ASHLAND
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

Civil Action No. 17-74-HRW

LARRY BRANDON STEVENS,                                PLAINTIFF,

v.                **MEMORANDUM OPINION AND ORDER**

CSX TRANSPORTATION, INC.,                        DEFENDANT.

This matter is before the Court upon the parties' cross motions for summary judgment. [Docket No. 16 and 17]. The issues have been fully briefed by the parties. [Docket Nos. 16-1, 17-1, 20, 20-1 and 21]. For the reasons set forth herein, the Court finds that the Defendant is entitled to judgment as a matter of law.

**I.**

This case arises from the termination of Larry Brandon Stevens' employment at CSX Transportation, Inc. ("CSXT") and the subsequent arbitration proceeding. Stevens seeks to overturn the arbitration award which affirmed his termination.

**A.**

Stevens was hired by CSXT in 2006. He began as a Conductor and rose through the ranks to become Yardmaster, then, Train Dispatcher, and, eventually, Manager of Community Affairs and Safety. [Docket No. 14, Stipulated Arbitration Record, 209].

Throughout his employment at CSX, Stevens was a member of the American Train Dispatchers Association ("ATDA") union. During the relevant time, CSXT and ATDA were

party to a collective bargaining agreement ("CBA") which governs the rates of pay, rules, and working conditions of the employees ATDA represents. SAR181–340.

On June 24, 2014, the Kentucky State Police received a report that Stevens had engaged in illegal sexual communications with a 17-year-old girl. SAR024, SAR053–55.

On August 20, 2014, Stevens was charged with one count of prohibited use of an electronic communication system to procure a minor, a sex offense, two counts of the use of a minor under 18 in a sexual performance and five counts of possession of matter portraying sexual performance by a minor. SAR 024–26, SAR053–55.

The same day, CSXT terminated Stevens from his management position. However, at that time, Stevens had seniority rights as a Train Dispatcher. Therefore, he continued his employment with CSXT in that role. SAR 178.

Pursuant to the CBA, on August 29, 2014, CSX charged Stevens with violation of CSXT Operating Rule 104.4 which prohibits "[c]riminal conduct that may damage CSX's reputation or that endangers CSXT property, employees, customers or the public." SAR 052. Stevens was held out of service pending the investigation. *Id.*

### B.

The CBA required CSXT to hold an on-property investigative hearing within ten days of issuing its charges. SAR220. Pursuant to the CBA, in the event an employee is charged with an offense by CSX he or she shall not be disciplined without cause and only after a fair and impartial investigation. SAR 220, Article 12(a). In the event an employee is charged for any offense, CSX retains the exclusive right to hold the employee out of service pending an investigation. SAR 220, Article 12( c). Furthermore, in the event the employee is subject

2

to a state court action, CSX retains the exclusive right to delay the charge and investigation until the state court has entered a final determination. *Id.* Upon the completion of a fair and impartial investigation of a rule violation an employee is entitled to a written decision regarding the administered discipline. SAR 220, Article 12(e). Should the employee not agree with the investigation decision he or she may appeal the decision to CSX's highest designated officer.2 SAR 221, Article 12(g). Following a decision by the highest designated officer, either party may appeal the decision to the National Railroad Adjustment Board ("NRAB"). SAR 223, Article 12( c). Further review is authorized under the Railway Labor Act. *Id.* If any final determination exonerates the employee he or she shall be restored to clear employment record, reinstated with all rights unimpaired, and compensated for all time lost less earning made in other employment while out of service. SAR 221, Article 12(I).

However, if an employee is "subject to trial in the courts," the CBA gives CSXT the authority to delay the investigative hearing until after the employee's trial. SAR220. At the request of Stevens' representative, CSXT agreed to delay the investigative hearing until after the criminal court resolved his case. SAR045.

It is here that the parties' accounts diverge. Stevens states that CSX later elected to move forward with the investigation prior to a determination by the state court. SAR 045-048. Stevens contends that he agreed to proceed with the investigation due to financial hardship resulting from being held out of service. SAR 039. According to CSXT, however, it was Stevens who insisted that CSXT cancel the postponement and proceed with the on-property investigation..

In either event, an investigative hearing on Stevens' disciplinary charge was convened on

3

May 28, 2015. SAR008. At the hearing, CSXT police officer, Ashlynn Davis, testified that Stevens had been arrested for and charged with the aforementioned crimes. SAR024–31. She introduced several news releases in this regard. She also testified that she released Stevens' CSXT-issued laptop and I-pad to the Kentucky State Police ("KSP") in December 2014. SAR029. Agent Davis further testified that the state police had not yet returned these items; based upon this, she believes that they were still part of an ongoing criminal investigation. SAR030. Davis did not testify concerning the contents of the electronic devices or produce any documents or evidence of criminal conduct from the KSP.

Stevens testified and stated that the criminal charges against him were still pending. SAR038. When questioned about Operating Rule 104.4, he agreed that a criminal conviction is not necessary to violate CSXT's rule against criminal conduct. SAR040. Nonetheless, he denied violating Operating Rule 104.4. SAR039–40. He was not asked to respond to the factual allegations concerning his guilt or innocence. SAR 039-040. Stevens confirmed that he had been present during the entire hearing, had heard all of the testimony, and had been allowed to present witnesses and introduce relevant testimony and evidence. SAR042.

After the hearing, CSXT management decided that Stevens had violated Operating Rule 104.4. On June 12, 2015 Stevens was officially dismissed from CSXT.

As provided for in the CBA, ATDA filed an appeal of the investigation decision to CSXT's highest designated officer, who, rejected the appeal and upheld the investigation ruling. SAR069.

ATDA appealed CSXT's decision to a Public Law Board, an arbitral tribunal formed between CSXT and ATDA pursuant to the Railway Labor Act. SAR063. The union's submission

4

to the PLB focused on CSXT's alleged failure to show that Stevens' off-duty criminal conduct damaged CSXT. SAR103–04. It also argued that CSXT erred in basing its action on "an accusation" and not the outcome of a court trial. SAR104.

CSXT argued that it had produced substantial evidence showing that Stevens violated Operating Rule 104.4. SAR004. That evidence was the same as produced at the initial investigation: the news articles, CSXT's interactions with the police, the court docket online, and Agent Davis's testimony. SAR005. CSXT emphasized that having one of its employees accused of engaging in inappropriate sexual conduct with a child could damage CSXT's reputation, and, CSXT noted, had also endangered the 17 year old victim, who was a member of the public, both clearly prohibited by Rule 104.4. SAR005.

The PLB decided in favor CSXT. SAR180. The arbitrator concluded by stating unequivocally that CSXT "has established by substantial evidence that [Stevens] had violated Rule 104.4 and the assessment of the penalty of dismissal is neither arbitrary nor excessive." SAR179. The written award described much of the same evidence described above, including the interactions with the police and the existence of criminal charges, and Stevens' testimony. SAR78-79.

The Court notes that on December 17, 2015, the Commonwealth of Kentucky voluntarily dismissed all criminal charges pending against Stevens concerning this case.

## C.

Stevens filed this lawsuit, seeking to set aside Award No. 98 of Public Law Board No. 7494. Both parties seek judgment as a matter of law.

\

**II.**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56©; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," *Celotex*, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989). In considering a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 250 (6th Cir.1998). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

The standard of review for cross-motions of summary judgment does not differ from the

standard applied when only one party files a motion. *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir.1991). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits." *Id.* (citations omitted). Thus, when the court reviews cross-motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Id.*

### III.

Judicial review of railroad labor arbitration awards is governed by § 3 First (q) of the RLA. 45 U.S.C. § 153, First (q).

The Sixth Circuit Court of Appeals set forth the standard for judicial review of labor arbitration awards in *Michigan Family Resources, Inc. v. Service Employees International Union Local* 517M, 475 F.3d 746 (6th Cir.) 2008).[1] The proper inquiry is whether the arbitrator committed "procedural aberration." *Id.* at 753. Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? Was the arbitrator "arguably construing or applying the contract" in resolving any legal or factual disputes in the case? *Id.*

This standard left the scope of judicial review razor thin, but reasoned that it "respects the

---

[1] Although *Michigan Family* involved the appeal of an arbitration award under the National Labor Relations Act ("NLRA"), it applies equally under the RLA. *BLET v. United Transportation Union*, 700 F.3d 891 (6th Cir. 2012).

7

parties' decision to hire their own judge to resolve their disputes, a view that respects the finality clause in most arbitration agreements." *Michigan Family,* 475 F.3d at 753.

This standard of review has been characterized as 'among the narrowest known to the law.' " *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 563 (1987). Courts must "refuse to review the merits of an arbitration award," because courts "have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim." *BLET*, 700 F.3d at 900 (quotations & citations omitted). If courts were to act otherwise, having the final say on the merits of arbitration awards, the well established federal policy of promoting industrial stabilization through CBA's would be severely "undermined." *Id.* (quotations & citations omitted).

In *BLET*, the Sixth Circuit explained that "only the first and third parts" of its analysis--(1) whether the arbitrator resolved a dispute not committed to arbitration and (3) whether the arbitrator was "arguably construing or applying the contract"--apply to claims that an arbitration board exceeded its jurisdiction under the RLA. *Id.* at 902. Here, only the "arguably construing" inquiry is in dispute.[2]

Under *Michigan Family* and *BLET*, the "arguably construing" standard allows "only the most egregious awards" to "be vacated." *Id.* at 901 (*quoting Michigan Family*, 475 F.3d at 753). "Properly articulated, the analysis focuses on a single question: did 'the arbitrator appear to be interpreting the agreement or agreements before him? If so, the court's inquiry ends." *Id.* All

---

[2] In his dispositive motion, Stevens abandoned his claims alleging fraud, corruption and violations of due process.

8

doubts are resolved in favor of the arbitrator, who is "presume[d]" to have interpreted the agreement. *Id.* The arbitrator's decision may be set aside only if it is " 'so ignorant of the contract's plain language' that 'any contention that the arbitrator was construing the contract' is 'implausible.' " *Id.* This is a "rare exception." *Id.* at 901.

It is of no moment whether the court disagrees with the arbitrator's decision. *Id.*; *see also, e.g., Airline Prof'ls Ass'n of Int'l Bhd. of Teamsters, Local Union No. *19 1224 v. ABX Air, Inc.*, 274 F.3d 1023, 1030 (6th Cir. 2001) ("A court may not overrule an arbitration award simply because its interpretation of the agreement differs from that of the arbitrator."). Nor does it matter if the arbitrator committed "errors in resolving the merits of the dispute--be they 'serious,' 'improvident,' or even 'silly,' [as long as] the arbitrator was construing or applying the contract." *BLET*, 700 F.3d at 901.

## IV.

Rule 104.4(b) requires "criminal conduct." Stevens maintains that he was not found guilty of criminal conduct; rather, he was arrested and those charges were dismissed. According to Stevens, the PLB "instituted its own brand of industrial justice" by finding that an accusation of criminal conduct is equivalent to "criminal conduct." [Docket No. 16-1, p. 12].

Stevens argues that had the term "criminal conduct" been interpreted and applied correctly, the PLB would have reached a different result, and, presumably, Stevens would have been reinstated. Yet, his own argument rests upon the assumption that the PLB was, in fact, interpreting and applying a term found in the CBA , to-wit, criminal conduct". By virtue of his

9

own argument, Stevens acknowledges that the PLB was "construing" the CBA, which is all that is required. That Stevens disagrees with the PLB's decision is not a valid basis upon which to vacate an award. *See Michigan Family*, 475 F.3d 754. It is not the job of this Court to determine whether the PLB's reading "was the best reading", but, rather, that it read the relevant contract within the bounds of reason. *BLET* 700 F.3d 905.

Relying upon non-binding and mostly irrelevant cases from outside of the Sixth Circuit, Stevens also contends that his arrest, alone, does not amount to "substantial evidence" and, therefore, the PLB's award is flawed. Again, Stevens' argument bootstraps itself. He is questioning the type and amount of evidence upon which the PLB relied. This, however, goes to the merits of the award and, again, this is not subject to review. *Id.* at 90..

Stevens further suggests that the PLB relied more upon the potential damage to CSXT's reputation than upon "criminal conduct" and that this skewed analysis somehow infects the PLB's award so egregiously that it must be vacated. This argument is, really, nothing more that a reiteration of his plea that the PLB was wrong. Moreover, it is clear from the face of the award that the PLB based its decision in the language of Rule 104.4, considering both the criminal conduct *and* the reputational harm. SAR 040. The PLB apparently concluded that even though Stevens was no longer in the Public Affairs position, the fact that he was in a public-facing position when he engaged in the criminal conduct had the potential to tarnish CSXT's reputation. Whether the PLB erred by emphasizing that role, instead of Stevens' role as a dispatcher, is not for this Court to decide, as courts are not authorized to review awards just because they may be based on errors of fact. *Mich. Family*, 475 F.3d at 752 (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) ("[t]he courts are not authorized to reconsider

10

the merits of an award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract.")).

Finally, Stevens seizes upon the factual dispute regarding who decided that the on-property investigation proceed, even though the criminal proceedings had yet to conclude. The PLB accepted CSXT's version of events, to-wit, that it was Stevens who insisted on proceeding with his company on-property hearing before the criminal proceedings were complete. It therefore concluded that Stevens could not rightfully complain that the result should have waited until the criminal charges were resolved. However, the PLB "arguably" construed and applied the parties' agreement. Therefore, its decision must stand, regardless of the sufficiency of the evidence supporting it.

V.

Applying the proper legal standard, the Court declines to disturb the arbitration award. The dispute was properly before the PLB and it "arguably" interpreted or applied the parties' CBA. There is no dispute that the PLB cited and applied the relevant provision in the parties' CBA and the operating rule that CSXT charged Stevens with violating. Stevens' arguments to the contrary are without merit because they only challenge the sufficiency of the evidence on which the PLB relied. His claim that evidence that he actually violated the rule was inadequate is not viable. Under the highly deferential standard of review that applies here, the Court cannot consider that question. The award at issue in this case is not among the "most egregious awards" that a court is permitted to vacate. *BLET*, 700 F.3d at 901 (quoting *Mich. Family*, 475 F.3d at 753).

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [Docket No. 16] be **OVERRULED** and Defendant's Motion for Summary Judgment [Docket No. 17] be **SUSTAINED**.

This ___ day of September, 2018.



Signed By:
*Henry R. Wilhoit, Jr.*
United States District Judge